# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHRISTEL VAN DYKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 13 C 5971 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | Judge John Z. Lee |
| CHILDREN AND FAMILY SERVICES, ) | |
| RICHARD H. CALICA, DCFS Director, ) | |
| DAWN BARNES, DCFS Investigator, ) | |
| LUTHERAN SOCIAL SERVICES ) | |
| ILLINOIS (LSSI), LSSI employees ) | |
| LINDA FULTZ, RENEE STEWART, ) | |
| MELISSA JOHNSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The Illinois Department of Children and Family Services ("DCFS") removed K.C., a four-year-old child, from the residence of Plaintiff Christel Van Dyke, who is K.C.'s maternal grandmother and former foster parent, based upon allegations of abuse. Consequently, Van Dyke brought this action against DCFS, the DCFS Director,[1] Lutheran Social Services of Illinois ("LSSI"), and LSSI employees Linda Fultz ("Fultz"), Renee Stewart ("Stewart"), and Melissa Johnson ("Johnson") (collectively "Defendants"), claiming that the allegations were unfounded. In doing so, Plaintiff contends that all Defendants violated her substantive due process rights and Defendants Fultz, Stewart, and Johnson, in particular, violated her Fourth Amendment rights to be free from unreasonable search and seizure. Plaintiff also brought a supplemental state-law claim pursuant to the Illinois Administrative Review Law, 735 Ill. Comp. Stat. 5/3-101 *et seq.*,

---

[1] DCFS replaced its Director several times since Plaintiff filed suit. For the purpose of this Memorandum Opinion and Order, the DCFS Director will be referred to by title only.

seeking this Court's review of a final DCFS administrative action denying her request to return K.C. to her home. In addition, Plaintiff filed a motion for a temporary restraining order and preliminary injunction ordering Defendants to return K.C. to her home. In her reply, Plaintiff also asks this Court to appoint a special master to investigate K.C.'s well-being.

For their part, Defendants have moved to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Defendants also oppose Plaintiff's motion for a temporary restraining order and preliminary injunction.

For the reasons stated herein, the Court grants Defendants' motion to dismiss Plaintiff's substantive due process claim, unreasonable seizure claim, and claim for administrative review. The Court denies Defendants' motion to dismiss Plaintiff's unreasonable search claim. The Court also denies Plaintiff's motion for a temporary restraining order, preliminary injunction, and appointment of a special master.

## **Factual Background**[2]

Van Dyke is the maternal grandmother of K.C., a minor who was three years old at the time of the events in question. (2d. Am. Compl. ¶ 5.) Defendant DCFS temporarily placed K.C. in Van Dyke's care as a foster child in 2011. (*Id.* ¶ 6.) K.C. was adjudicated a neglected minor in 2012, and the DCFS Guardianship Administrator was appointed guardianship of K.C. (Defs.' Mem. Supp. Mot. Dismiss, Ex. B, Op. Admin. Law Judge 4.)

---

[2] The following facts are taken from Plaintiff's Second Amended Complaint and are accepted as true for the purpose of resolving the motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The Court also refers to relevant juvenile court orders, an administrative law judge ruling, and other matters of public record. The Court may refer to these documents in considering Defendants' motion to dismiss. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("The district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment" (quotation omitted)).

K.C.'s biological father, R.C., was allowed to visit K.C. even though Van Dyke alleges R.C. had been incarcerated for drug-related offenses. (2d. Am. Compl. ¶ 13.) While K.C. was under Van Dyke's care, the juvenile court issued an order requiring her to permit with visitation between R.C. and K.C., not speak ill or be critical of R.C. in front of K.C., and provide documentation from a healthcare provider if an illness prevented K.C. from visiting R.C. (Defs.' Mem. Supp. Mot. Dismiss, Ex. D, Jan. 15, 2013 Winnebago Cnty. Order.) The juvenile court also determined that the permanency goal for K.C. was to return home with his parents. (*Id.*, Ex. C, Jan. 15, 2013 Winnebago Cnty. Order Following Permanency Hearing.)

Van Dyke alleges that K.C. told her that he had been sexually abused during visits with R.C. (2d. Am. Compl. ¶ 13.) She also claims that her reports of sexual abuse to the DCFS were ignored. (*Id.* ¶¶ 15-16.) Accordingly, Van Dyke petitioned the juvenile court to intervene and suspend R.C.'s visitation rights pending an investigation. (*Id.* ¶ 17.) Subsequently, an administrative law judge ("ALJ") found Van Dyke's allegations of sexual abuse to be without merit. (Defs.' Mem. Supp. Mot. Dismiss, Ex. B, Op. Admin. Law Judge 6.)

In her complaint, Van Dyke further alleges that Johnson directed Fultz to remove K.C. from her home in retaliation for her petition to the juvenile court. (2d. Am. Comp. ¶ 18.) According to Van Dyke, under the false pretense of conducting a wellness check, Fultz, a police officer, and a DCFS employee gained access to Van Dyke's home. (*Id.*) Once inside her home, Defendants conducted a search, made allegations of abuse against Van Dyke, took K.C. without providing the legally required fourteen-days notice, and placed K.C. with other relatives. (*Id.*) Van Dyke claims the allegations of abuse were based upon a paper cut and were later unfounded. (*Id.*)

3

After K.C. was removed from her home, Van Dyke was allowed limited visits with him. (*Id*. ¶ 20.) During these visits, she observed and reported possible signs of physical abuse on K.C., including cuts on his wrist, mosquito bites, blood clots under his finger nails, a dirty appearance, weight loss, a depressed and reserved demeanor, and what appeared to be cigarette burns on his body. (*Id.* ¶ 21.)

On March 12, 2013, Van Dyke filed an emergency petition in the Winnebago County Juvenile Court seeking an order to compel the DCFS to place K.C. back in her home. (Defs.' Mem. Supp. Mot. Dismiss, Ex. F, Emergency Pet. for Writ of Mandamus and for Hearing Instanter.) After a hearing, the Winnebago County Juvenile Court denied her petition. (*Id.*, Ex. G, Juvenile Division Order.)

Van Dyke then requested a Clinical Placement Review for K.C. (*Id.*, Ex. B, Op. Admin. Law Judge 5.) It was determined that it remained in K.C.'s best interest not to be returned to Van Dyke's home. (*Id*.) In response, Van Dyke filed an appeal, and the appeals hearing was completed on June 24, 2013. (*Id*.)

On July 11, 2013, the ALJ recommended denying Van Dyke's appeal and found that she was unwilling to cooperate with the DCFS and the juvenile court in furthering the goal of returning K.C. to his biological parents. (*Id*. 8.) The ALJ noted that Van Dyke's allegations of physical and sexual abuse against R.C. were "not believable or supported by any facts" and "misguided, vitriolic attempts to impede [R.C.'s] service plan and the Juvenile Court's reunification goal." (*Id*.) Six days later, the DCFS adopted the ALJ's recommendation and issued a final administrative decision denying Van Dyke's appeal for the return of K.C. to her home. (*Id*. 11.) Van Dyke now brings substantive due process and Fourth Amendment claims

against Defendants. As a supplemental state-law claim, she asks this Court to review and overturn DCFS' decision denying her appeal. Van Dyke also seeks a temporary restraining order and preliminary injunction to return K.C to her home.

## Discussion

Defendants have moved to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). The purpose of a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) is to test the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 12(b)(1) requires dismissal of claims over which the federal court lacks the "statutory or constitutional power to adjudicate the case." *United States v. Lawrence*, 535 F.3d 631, 636 (7th Cir. 2008).

Rule 12(b)(6) requires dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Id.*

A complaint must also, however, allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must

5

plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## I. Substantive Due Process Claim

Van Dyke's first federal claim alleges that Defendants' conduct against her, including taking K.C. from her home, failing to investigate signs of abuse, and limiting her contact with K.C., is a violation of her Fourteenth Amendment right to substantive due process. (2d. Am. Compl. ¶ 31.) Defendants argue that Plaintiff has no impairment of a substantive due process interest as K.C.'s former foster parent. The Court agrees and dismisses Plaintiff's substantive due process claim.

Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. A Section 1983 action requires Van Dyke to prove that she has a liberty interest in her relationship with K.C. that the state could not impair without due process. *Procopio v. Johnson*, 994 F.2d 325, 328 (7th Cir. 1993). "If [she] demonstrate[s] such an interest, [she] then must show that the process accorded [her] was not constitutionally adequate." *Id.*

Foster parents do not have constitutional rights to a continued relationship with a foster child placed in their home. *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 839 (1977); *Procopio*, 994 F.2d at 329. "[T]he foster family's existence is subject to the state's determination that it should continue, and Illinois law can create no expectancy of a constitutionally protected liberty interest." *Procopio*, 994 F.2d at 330. Therefore, a foster family relationship does not constitute "a liberty interest that states cannot disrupt without due process." *Procopio*, 994 F.2d at 328; *see Johnson v. Burnett*, 182 Ill. App. 3d 574, 582 (Ill.

6

App. Ct. 1989) (noting that "since Illinois law does not create an expectation of a continued relationship, foster parents have no constitutionally protected liberty interest in the continued custody of their charges"). Because neither Illinois law nor federal law creates a liberty interest in the foster parent relationship, Van Dyke has no impairment of a substantive due process interest.

In response, Van Dyke cites *Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012), for the proposition that as K.C.'s grandmother, she possesses a liberty interest in a close familial relationship with her grandson.[3] *Xiong*, however, discussed the right to familial integrity in a lawsuit brought by a boy's mother and stepfather. *Id*. at 286. Although it may be true that parents have a liberty interest "in the care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), as a foster parent and a grandparent without permanent custody rights, Van Dyke does not share the same relationship with K.C. as the parent-child relationship in *Xiong*.

In *Ellis v. Hamilton*, the Seventh Circuit noted that there is an "absence of compelling authority for holding that grandparents, whether natural or adoptive, ever have a liberty interest under the due process clause" in associating with their grandchildren. 669 F.2d 510, 513 (7th Cir. 1982). The plaintiff in *Ellis* was the adoptive grandmother of two children and brought a Section 1983 due process claim against welfare and judicial officers for the removal of the children from her home. *Id.* at 511. Because the plaintiff was not only the children's adoptive grandmother, but also their natural great-aunt, *de facto* mother and father, and alleged legal

---

[3] In her Opposition, Plaintiff alleges for the first time a procedural due process claim. Because Plaintiff did not allege a procedural due process violation in her Second Amended Complaint, the Court need not address this argument. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (noting "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

custodian, the court was "reluctant to conclude . . . [that she did] not have a liberty interest sufficiently like that of a parent[.]" *Id.* at 511, 513-14. Accordingly, based on the facts of that case, the court found that the plaintiff *might* have a liberty interest in the association with her adoptive grandchildren and then went on to hold that she was not denied due process. *Id*. at 514. Unlike the plaintiff in *Ellis*, however, Van Dyke did not have legal custody of K.C. or even an expectation to continue to care for K.C. When K.C. was removed from Van Dyke's home, he was under the guardianship of the DCFS. Furthermore, the juvenile court had determined that the permanency goal for K.C. was to return home with his parents rather than remain with Van Dyke. Although Van Dyke is K.C.'s grandmother, her status as K.C.'s temporary caregiver does not give rise to the same relationship between a parent and child or a permanent custodian as was the case in *Ellis*.

Because Van Dyke has failed to demonstrate that she possesses a liberty interest in her relationship with K.C., this claim is dismissed.

## II. Fourth Amendment Unreasonable Search and Seizure Claim

Van Dyke's next federal claim alleges that Barnes and Fultz, under the direction of Johnson, violated her Fourth Amendment rights by entering her home under false pretenses and conducting an unreasonable search and seizure. In response, Defendants assert that social workers performing discretionary functions are entitled to qualified immunity from suits under Section 1983 and that Plaintiff does not state a claim for violation of her Fourth Amendment rights. The Court denies Defendants' motion to dismiss her unreasonable search claim but grants their motion to dismiss her unreasonable seizure claim.

8

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated."). Van Dyke alleges that Barnes and Fultz violated her Fourth Amendment rights by entering her home under "false pretenses and conduct[ing] the illegal, harassing, and threatening search of her property and abduct[ing] her grandson." (2d. Am. Compl. ¶ 34.) Although consent may provide the basis for a valid search, "[t]he standard for measuring the scope of a [plaintiff's] consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange[.]" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (internal citations omitted).

Accepting Van Dyke's allegations as true, Johnson directed Fultz to remove K.C. from her home in retaliation for reporting K.C.'s possible sexual abuse to the DCFS. (2d. Am. Compl. ¶ 18.) In carrying out Johnson's directives, Barnes and Fultz used the "false pretense of conducting a wellness check" to gain access to Van Dyke's home. (*Id.*) Once inside, rather than conduct a wellness check, Barnes and Fultz searched her home and presented allegations of abuse. (*Id*.) Because Barnes and Fultz allegedly used false pretenses to gain access to Van Dyke's home, a reasonable person may not have consented to the search had she known that Defendants did not intend to conduct the wellness check. Thus, Van Dyke has alleged a valid Fourth Amendment claim for an unreasonable search.

The Court also declines to dismiss the unreasonable search claim based on qualified immunity. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."). "Because an

9

immunity defense usually depends on the facts of the case," and because plaintiffs are "not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity," dismissal at the pleading stage is typically inappropriate. *Id.* (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir.2000)).

"Qualified immunity can be grounds for a Rule 12(b)(6) dismissal when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established right." *McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1011 (N.D. Ill. 2012) (citing *Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 679, 675 (7th Cir. 1990)). "The Supreme Court has set out a two-pronged inquiry to guide courts in resolving this issue: (1) determining whether the facts alleged make out a constitutional violation; and (2) determining whether the constitutional standards were clearly established at the time of the alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232-42 (2009)).

Here, Van Dyke has properly alleged an unreasonable search claim based on Defendants' use of false pretenses to gain access to her home and conduct a search, and the Fourth Amendment clearly establishes Van Dyke's right to be free from an unreasonable search. Because Van Dyke has alleged a constitutional violation and her constitutional rights were clearly established at the time of the alleged misconduct, granting Defendants qualified immunity is improper at this time. The Court therefore denies Defendants' motion to dismiss Van Dyke's unreasonable search claim.

Although Van Dyke's unreasonable search claim survives, her unreasonable seizure claim must be dismissed. While she claims Defendants "seiz[ed] and abduct[ed] her grandson," Van Dyke brings this lawsuit on her own behalf and makes no allegations that she herself was seized

by Defendants. *See United States v. Jerez*, 108 F.3d 684, 689 (7th Cir. 1997) ("a 'seizure' of the person occurs only if a reasonable person in similar circumstances would not have felt 'free to leave'"). Instead, Van Dyke alleges Defendants entered her home under false pretenses, searched her home, and removed K.C. from her care. Nowhere does Van Dyke allege any facts that would suggest she did not feel free to leave the encounter with the Defendants in her home. Because Van Dyke does not allege that she was seized, the Court dismisses her claim for unreasonable seizure under the Fourth Amendment.

### III. Administrative Review pursuant to 735 Illinois Compiled Statute 5/3-101

#### A. The *Rooker-Feldman* Doctrine

Plaintiff asks this Court to exercise its supplemental jurisdiction to review and overturn the final administrative decision issued by the DCFS. She claims that the DCFS decision, which denied her appeal for the return of K.C. to her home, was "clearly erroneous and against the manifest weight of the evidence." (2d. Am. Compl. ¶¶ 26-27.) As a threshold matter, Defendants contend that the *Rooker-Feldman* doctrine bars this Court from reviewing the judgment of a state court in civil litigation. Because Plaintiff seeks review of a separate administrative proceeding rather than the juvenile court judgment, the Court concludes that the *Rooker-Feldman* doctrine does not bar this Court from reviewing the DCFS decision.

The *Rooker-Feldman* doctrine, articulated by the Supreme Court in *Rooker v. Fidelity Trust Company.,* 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983), is a jurisdictional rule mandating that "[o]nly the Supreme Court of the United States may review the judgment of a state court in civil litigation." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.,* 569 F.3d 667, 670 (7th Cir. 2009). Under the

*Rooker-Feldman* doctrine, federal district courts lack jurisdiction over lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The doctrine, therefore, "precludes lower federal court jurisdiction over claims seeking review of state court judgments." *Taylor v. Fed. Nat'l Mortg. Ass'n,* 374 F.3d 529, 532 (7th Cir. 2004) (internal quotations omitted). District court review of state administrative decisions, however, is not barred by the *Rooker-Feldman* doctrine. *See Van Harken v. City of Chi.*, 103 F.3d 1346, 1348-49 (7th Cir. 1997).

The *Rooker-Feldman* doctrine also deprives lower federal courts of jurisdiction if the claims made in federal court are "inextricably intertwined" with the state-court judgment. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002). Determining whether a claim is "inextricably intertwined" with a state-court judgment "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor*, 374 F.3d at 533. A claim that is inextricably intertwined with a state-court judgment "call[s] upon the district court to review the state court decision and [is] thus beyond the district court's jurisdiction." *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir. 2001) (internal quotation and citations omitted). If a plaintiff had no reasonable opportunity to raise a claim in state court, however, the *Rooker-Feldman* abstention does not apply. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556 (7th Cir. 1999).

Defendants argue that Van Dyke's request for this Court to review the DCFS decision is inextricably intertwined with the decision of the Juvenile Court of Winnebago County. Van Dyke responds that the DCFS decision upholding the Clinical Placement Review is a separate proceeding from the state-court judgment which denied her petition for writ of mandamus. "While inextricably intertwined is a somewhat metaphysical concept, the crucial point is whether the district court is in essence being called upon to review the state-court decision." *Taylor*, 374 F.3d at 533 (internal quotation and citation omitted). Here, this Court is not being called upon to review the state-court decision and is instead being asked to review a separate administrative proceeding.

Van Dyke filed an emergency petition for writ of mandamus in the Winnebago County Juvenile Court based on the Illinois Constitution.[4] In her emergency petition, Van Dyke claimed that she established the four elements necessary for a writ of mandamus: "(1) a clear legal right to relief, (2) a clear duty of the public official to act, (3) that the respondent public official has clear authority to comply with the writ, and (4) that the petitioner has no other adequate remedies." (Defs.' Mem. Supp. Mot. Dismiss, Ex. F, Emergency Pet. for Writ of Mandamus and for Hearing Instanter.)

After her emergency petition was denied by the Winnebago County Juvenile Court,[5] Van Dyke requested a separate Clinical Placement Review with the DCFS. The clinical reviewer recommended that K.C. not be returned to Van Dyke's home. Van Dyke appealed the Clinical

---

[4] On March 12, 2013, Van Dyke filed an emergency petition in the Circuit Court of Winnebago County for a "writ of mandamus, to compel DCFS to place [K.C.] back under her foster care." (Defs.' Mem. Supp. Mot. Dismiss, Ex. F, Emergency Pet. for Writ of Mandamus and for Hearing Instanter.)

[5] The order held that Van Dyke's "emergency petition for writ of mandamus and for hearing instanter is hereby heard and denied." (Defs.' Mem. Supp. Mot. Dismiss., Ex. G, Juvenile Division Order.)

Placement Review, and an appeals hearing was held pursuant to 89 Illinois Administrative Code § 337. An ALJ recommended denying her appeal for the return of her grandson, and the DCFS adopted the ALJ's recommendation. (*Id.*, Ex. B, Op. Admin. Law Judge 5.) Van Dyke now asks this Court to review the denial of her appeal by the DCFS and order K.C. returned to her home.

The state-court order and the DCFS decision comprised two separate proceedings and denied distinct requests for relief. Van Dyke's emergency petition alleged that K.C. was forcibly taken from her home due to unfounded allegations of abuse. The emergency petition requested a writ of mandamus based on the Illinois Constitution ordering K.C. to be returned to Van Dyke's home. In contrast, Van Dyke's appeal of the Clinical Placement Review, pursuant to 89 Illinois Administrative Code § 337, sought to demonstrate that K.C.'s "needs regarding safety, well being and permanency" were best met by living with her. (*Id.* at 8.) If the Court were to review and overturn the DCFS decision regarding the needs of K.C., the Court could do so without disturbing the Winnebago County Juvenile Court's order which denied a separate emergency petition. Accordingly, the *Rooker-Feldman* doctrine does not bar this Court's review of the DCFS administrative decision.

### B. Supplemental Jurisdiction

Although the *Rooker-Feldman* doctrine does not bar this Court from reviewing the DCFS decision, the Court nonetheless declines to exercise supplemental jurisdiction over this claim. The Seventh Circuit "acknowledge[s] the broad discretion of district judges in making judgments concerning the retention of supplemental claims." *Van Harken*, 103 F.3d at 1354. This Court may decline to exercise supplemental jurisdiction over a state-law claim that "substantially

14

predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Plaintiff asks this Court to review an administrative decision pursuant to 735 Illinois Compiled Statute 5/3-101. "But this Court is of course not subject to the provisions of the Illinois Code of Civil Procedure that confer jurisdiction upon, and that establish the procedures for, Illinois Circuit Courts to review decisions by Illinois administrative agencies." *Badanish v. City of Chi.*, 895 F. Supp. 201, 203 (N.D. Ill. 1995); *id.* (also noting that federal court "jurisdiction is limited and is expressly defined by Congress" and not by 735 Ill. Comp. Stat 5/3-101).

As discussed above, the Court dismisses Plaintiff's substantive due process and unreasonable seizure claims. Her only remaining federal claim is one for an unreasonable search. The Court finds that the claim for administrative review "substantially predominates over the [] claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). First, the terms of proof and scope of the issues raised by an administrative review will substantially predominate over Plaintiff's remaining unreasonable search claim. An administrative review of the DCFS decision will require the Court to review the evidence considered by the ALJ, including the testimony of eight witnesses and twenty-seven exhibits. (Defs.' Mem. Supp. Mot. Dismiss, Ex. B, Op. Admin. Law Judge 2-4.) The Court will need to consider this evidence in determining whether the DCFS ruling "is clearly erroneous and against

the manifest weight of the evidence" in regards to K.C's needs for his safety, well-being, and permanency. (2d. Am. Comp. ¶ 27.) On the other hand, Plaintiff's unreasonable search claim will likely be limited to issues of consent, whether the search was reasonable, and the testimony of the individuals who carried out the alleged search.

Next, the remedy sought by Plaintiff's state-law claim substantially predominates over the remedies sought by her federal claim. The crux of Plaintiff's Second Amended Complaint asks this Court to return K.C. to her home by reviewing and overturning a decision by the DCFS. The remedy of returning K.C. to Plaintiff's home in the interest of child safety substantially predominates over whatever attorney's fees and damages she seeks for her remaining Fourth Amendment unreasonable search claim. Furthermore, the issues involving child custody are generally matters within the realm of state courts. *See Hickey v. Duffy*, 827 F.2d 234, 244 (7th Cir. 1987) (noting "family law matters [] have traditionally been left in the province of the states") (internal citation omitted). An Illinois state court is better suited to review the DCFS decision and make a determination regarding K.C.'s best interests, particularly where, as here, the agency's determination does not impede upon plaintiff's constitutionally protected interest. For these reasons, the Court declines to exercise supplemental jurisdiction over Van Dyke's administrative review claim and dismisses this claim without prejudice.

IV.   **Temporary Restraining Order and Preliminary Injunction**

Finally, Plaintiff seeks a temporary restraining order and preliminary injunction ordering Defendants to return K.C. to her home. Van Dyke alleges that she has observed multiple signs of potential abuse on K.C., including cigarette burns, unattended large cuts on the wrist, overly abundant insect bites to the head, and rashes. She also states that the current foster parents have

seven individuals in addition to K.C. living in their home, that there is smoking in the home, and that K.C.'s illnesses are not being treated. In her reply brief, Van Dyke also asks this Court to appoint a special master to investigate K.C.'s well-being.

"[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (internal citations and quotations omitted). The moving party bears the burden of making a clear showing that it is entitled to the relief it seeks. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). To determine whether a situation warrants a preliminary injunction, the Court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase. *See Girl Scouts*, 549 F.3d at 1085-86. "The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001); *see YourNetDating, LLC v. Mitchell*, 88 F. Supp. 2d 870, 871 (N.D. Ill. 2000) (internal citation omitted).

In the threshold phase, the party seeking a temporary restraining order or preliminary injunction must: (1) show that it will suffer irreparable harm without the injunction; (2) that traditional legal remedies would be inadequate; and (3) that its claim has some likelihood of success on the merits." *Goodman*, 430 F.3d at 1086. If the party cannot show any one of these threshold requirements, the preliminary injunction must be denied. *Id*. If, however, the party satisfies this initial threshold, the Court proceeds to the balancing phase of the analysis. *Id*.

Plaintiff has failed to demonstrate a likelihood of success on the merits. Plaintiff asks this Court to order the return of K.C. to her care by reviewing and overturning the DCFS

decision. As explained above, the Court declines to exercise supplemental jurisdiction over her administrative review claim because it predominates over her remaining Fourth Amendment unreasonable search claim. Furthermore, to the extent that Plaintiff bases her motion on a substantive due process claim, she has failed to establish a likelihood of success on the merits.

Because Van Dyke has failed to demonstrate a likelihood of success on the merits, the Court need not address whether she will suffer irreparable harm or if traditional legal remedies are inadequate. *See Chi. Bd. of Realtors, Inc. v. City of Chi.*, 819 F.2d 732, 740-41 (7th Cir. 1987). The Court therefore denies Plaintiff's motion for a temporary restraining order, preliminary injunction, and appointment of a special master.

## Conclusion

For the reasons stated herein, the Court grants Defendants' motion to dismiss Plaintiff's request for administrative review (Count I) against DCFS and the DCFS Director, substantive due process claim (Count II) against all Defendants, and unreasonable seizure claim (Count III) against Defendants Barnes, Johnson, and Fultz. The Court denies Defendants' motion to dismiss Plaintiff's unreasonable search claim (Count III) against Defendants Barnes, Johnson, and Fultz. The Court also denies Plaintiff's motion for a temporary restraining order, preliminary injunction, and appointment of a special master.

**SO ORDERED**          **ENTER:**    **5/22/14**

_____

**JOHN Z. LEE**
**United States District Judge**