**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTEL VAN DYKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **13-cv-5971** |
| **v.** | ) | |
| | ) | **Hon. John Z. Lee** |
| **DAWN BARNES; LINDA FULTZ; and** | ) | |
| **MELISSA JOHNSON, individually and as** | ) | |
| **employees of LUTHERAN SOCIAL** | ) | |
| **SERVICES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions to dismiss Plaintiff Christel Van Dyke's Third Amended Complaint. Defendants Melissa Johnson and Linda Fultz move to dismiss Plaintiff's Third Amended Complaint for failure to properly effectuate service under Federal Rule of Civil Procedure ("Rule") 4(e) and for failure to state a claim under Rule 12(b)(6). Johnson and Fultz argue that Plaintiff has failed to properly serve them by leaving service papers with a receptionist not authorized to receive service. Johnson and Fultz also argue that Van Dyke's procedural due process claim falters because she fails to identify a constitutionally protected interest. Defendant Dawn Barnes, the Child Protection Investigator for the Illinois Department of Children and Family Services ("DCFS"), also moves to dismiss Plaintiff's Third Amended Complaint for failure to state a claim. Barnes argues that Van Dyke lacks a constitutionally-protected interest in a foster child relationship sufficient to sustain a due process claim and that Van Dyke's claim for First Amendment retaliation is based on only her private speech, not protected public speech, and therefore should be dismissed.

Plaintiff opposes both motions. She argues generally that she has a protected property interest in the foster child relationship and the benefits that arise under it are sufficient to assert a procedural due process claim. She also argues that she states a valid First Amendment retaliation claim because the speech she identifies touches on a matter of public concern, namely, foster child welfare. For the reasons provided here, the Court denies the motion to dismiss Van Dyke's Third Amended Complaint for improper service, grants the motions to dismiss Count I for procedural due process, and denies Barnes' motion to dismiss Count III for First Amendment retaliation.

## I. Factual & Procedural Background[1]

The main factual allegations in this case are captured in the Court's previous memorandum opinion and order. *Van Dyke v. Ill. Dep't of Children & Family Serv.*, No. 13 C 5971, 2014 WL 2134580, at **1–3 (N.D. Ill. May 22, 2014). The Court will iterate them briefly, as the allegations of Van Dyke's Third Amended Complaint largely mirror those of her Second Amended Complaint.

According to Plaintiff, Van Dyke is the maternal grandmother of K.C., a four year-old minor who was three years old at the time of the events in question. 3d Am. Compl. ¶ 5. In 2011, DCFS temporarily gave Van Dyke custody of K.C. as a foster child. *Id.* ¶ 6. A DCFS Guardianship Administrator was appointed guardianship over K.C. after he was adjudicated a neglected minor in 2012. *Van Dyke*, 2014 WL 2134580, at *1. K.C.'s biological father, R.C., was allowed to visit K.C., despite being frequently incarcerated for drug-related offenses and being physically abusive towards B.V., K.C.'s biological mother. 3d Am. Compl. ¶ 13.

---

[1] When reviewing the Defendants' motions to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendants increased R.C.'s visits with K.C. with inadequate supervision. *Id.* ¶ 13. R.C.'s increased visits led K.C. to report physically and sexually inappropriate acts committed by R.C.; after these visits, K.C.'s anxiety increased and his behavior worsened. *Id.* ¶¶ 13–14. Van Dyke attempted to remedy these problems but met with resistance from Defendants. *Id.* ¶ 15. Van Dyke reported R.C.'s physically and sexually inappropriate acts to Defendants, and getting nowhere, reported the acts to the DCFS abuse hotline and the police. *Id.* ¶ 16. Van Dyke then filed a motion to suspend R.C.'s visitation rights in juvenile court. *Id.* ¶ 17; *Van Dyke*, 2014 WL 2134580, at *2. The administrative law judge reviewed Van Dyke's allegations of sexual and physical abuse and found them to be "without merit." *Id*, at *2.

As a result of Van Dyke's motion, as alleged in the Third Amended Complaint, Johnson directed Fultz to remove K.C. from Van Dyke's home without the 14-day notice required under state law. *See* 3d Am. Compl. ¶ 18. On February 26, 2013, Fultz, accompanied by police officers and Barnes, gained access to Van Dyke's home under the false pretenses of conducting a wellness check. *Id.* Van Dyke alleges that Barnes lied to the police by claiming that Van Dyke received notice in court that K.C.'s placement would be changing. *Id.* After the police officers, Barnes, and Fultz gained access to Van Dyke's home, they lodged allegedly false allegations of abuse against Van Dyke and forcibly removed K.C. *Id.*

After K.C.'s removal, Van Dyke was allowed only limited visits with him. *Id.* ¶ 20. Johnson and Fultz brought K.C. to Van Dyke's house without notice, cancelled scheduled visits when Van Dyke was not at home, disallowed visits on Mother's Day while allowing R.C. visits on Father's Day, and barred Van Dyke from speaking to K.C. on the phone. *Id.* During Van Dyke's limited visits, she noticed possible signs of continued physical abuse of K.C., including cuts on his wrist, mosquito bites, blood clots under his fingernails, a disheveled and dirty

appearance, unexplained weight loss, a depressive and reserved demeanor, and apparent cigarette burns on his body. *Id.* ¶ 21. Defendants allegedly have not responded to Van Dyke's reports of this suspected abuse. *Id.* ¶ 22.

Further court and administrative action followed. Van Dyke filed an emergency petition in the Winnebago County Juvenile Court on March 12, 2013, seeking an order to compel DCFS to place K.C. back in her home. *Van Dyke*, 2014 WL 2134580, at *2. The Winnebago County Juvenile Court held a hearing and denied Van Dyke's petition. *Id.* After this denial, Van Dyke requested a Clinical Placement Review for K.C. *Id.* It was determined that it remained in K.C.'s best interest not to be returned to Van Dyke's home. *Id.* Van Dyke appealed this determination, and the appeals hearing was completed on June 24, 2013. *Id.* On July 11, 2013, the administrative law judge recommended denying Van Dyke's appeal and found that she was unwilling to cooperate with DCFS and the juvenile court in furthering the goal of returning K.C. to his biological parents and that her allegations of physical and sexual abuse against R.C. were "not believable or supported by any facts" and "misguided, vitriolic attempts to impede [R.C.'s] service plan and the Juvenile Court's reunification goal." *Id.* (quoting administrative law judge's opinion). On July 27, 2013, DCFS adopted the administrative law judge's recommendation and issued a final administrative decision denying Van Dyke's appeal for the return of K.C. to her home. *Id.*

Van Dyke now alleges she was extremely fearful to report her suspicions of abuse to others because her previous efforts to do so resulted in K.C. being removed from her care. *See* 3d Am. Compl. ¶ 23. Van Dyke alleges that, as a result of her ongoing and most recent reports, Johnson has eliminated phone communication with K.C. and severely limited Van Dyke's contact with K.C. *Id.*

This Court previously dismissed Van Dyke's substantive due process and Fourth Amendment unreasonable seizure claims. *See Van Dyke*, 2014 WL 2134580, at **4–5. The Court declined to exercise supplemental jurisdiction regarding the request to review the administrative denial of Van Dyke's DCFS petition. *See id.*, at *8. The Court also denied Van Dyke's motion for a temporary restraining order, preliminary injunction, and appointment of a special master. *Id.* The Court allowed Van Dyke to proceed with her claim for unreasonable search against Barnes, Fultz, and Johnson. *Id.*, at *9. Van Dyke has filed a Third Amended Complaint, adding claims under 42 U.S.C. § 1983 for violations of procedural due process and First Amendment retaliation. *See generally* 3d Am. Compl. ¶¶ 25–34, 40–44.

## II. Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. In reviewing the United States' motion to dismiss, the Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III. Discussion & Analysis

### A.   Dismissal for Failure to Serve is Premature

Johnson and Fultz move to dismiss Van Dyke's Third Amended Complaint with prejudice under Rule 4(e) for failure of proper service. Rule 4(e) allows for service of process by either "following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made" or by one of three alternative means: "delivering a copy of the summons and of the complaint to the individual personally"; "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or "delivering a copy of each to an agent authorized by appointment or by law." Fed. R. Civ. P. 4(e)(1)–(2). Under Rule 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Rule 4(m) "tells the court to dismiss the case without prejudice when service takes more than 120 days, unless the delay is attributable to 'good cause.'" *See Powell v. Starwalt*, 866 F.2d 964, 965 (7th Cir. 1989). Absent good cause, "[d]ismissal is obligatory." *Id.* As the Seventh Circuit suggests, "[r]ules of this character work best when applied mechanically." *Id.*

Johnson and Fultz point to a faulty effort at service made on July 22, 2014, by a special process server, Brad Metras, at Lutheran Social Services of Illinois ("LSSI"), Johnson and Fultz's place of employment. *See* Def.'s Mot. ¶ 7; *id.* Ex. A. Metras attempted to execute service on Melissa Epperson, a receptionist at LSSI. *Id.* ¶ 3. Metras apparently arrived at the LSSI office stating he had "papers" for Fultz and Johnson, and despite Epperson's protestations that Fultz no longer worked at LSSI, Metras testily left two envelopes with sticky notes indicating the packets were for Johnson and Fultz, respectively. *Id.* ¶ 5, 6. Epperson is not authorized to receive service of lawsuits on behalf of LSSI. *Id.* ¶ 6. Van Dyke clarifies that two attempts were made at service — the first, noted in Epperson's affidavit, was by Jeff Smith on

July 21, 2014; the second, which in Van Dyke's view was made appropriately, was by Metras on July 22, 2014. *See* Pl.'s Resp. Ex. 5.[2]

Regardless of the parties' disputes about the process servers, dispositive of the motion is the fact that the Third Amended Complaint was filed on July 15, 2014. By the terms of Rule 4(m), Van Dyke had 120 days from that date to effectuate service. Johnson and Fultz had until November 12, 2014, to serve Defendants. Johnson and Fultz filed their motion on August 14, 2014, before the 120-day time period under Rule 4(m) had run. Therefore, their motion was premature. The Court declines to dismiss Van Dyke's Third Amended Complaint for improper service.[3]

### B.     Van Dyke Fails to State a Procedural Due Process Claim

Defendants move to dismiss Count I, Van Dyke's claim for a violation of her procedural due process rights. A "due process inquiry involves two steps: '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting *Kent. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). In order to state a claim for procedural due process,

---

[2]     Van Dyke urges the Court to sanction counsel for Johnson and Fultz for conflating these two attempts at service and for "abject dishonesty" in doing so. *See* Pl.'s Resp. 11. The Court declines to impose sanctions. First, motions cannot be made in responsive briefings. More importantly, "[t]he central goal of Rule 11 is to deter abusive litigation practices." *Id.* at 1013. Van Dyke does not point to any evidence that the conflation was intentional and done as an abusive litigation tactic.

[3]     If Johnson and Fultz renew their motion after the 120-day deadline passes, and if then dismissal were appropriate, it would be *without prejudice* by the terms of Rule 4(m). *See* Fed. R. Civ. P. 4(m); *see also Powell*, 866 F.2d at 966 ("When the plaintiff shows 'good cause' for delay, the case should not be dismissed; when there is no good cause, the case should be dismissed without ado and without prejudice."). In any event, in look at the merits of the motion, the Court is not voncinced that dismissal would be appropriate. Van Dyke has submitted Metras' affidavit establishing that Johnson authorized Epperson to accept service on behalf of her and Fultz. *See* Pl.'s Resp. Ex. 5. Defendants have submitted nothing to the contrary, and it appears service was proper.

Van Dyke must first identify a liberty or property interest inherent in a continuing relationship with K.C. *See Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 728 (7th Cir. 2006).

This Court earlier held that Van Dyke has no liberty interest in a continuing relationship with K.C. *See Van Dyke*, 2014 WL 2134580, at **3–4. Van Dyke now argues that she has a property interest "inherent in foster parentage." Pl.'s Resp. 2. Van Dyke relies on *Youakim v. McDonald*, 71 F.3d 1274 (7th Cir. 1995), for this proposition. But the Seventh Circuit has analyzed *Youakim* and found that foster parents do not have a property interest in the benefits that are paid to their children. *See Dupuy*, 397 F.3d at 515 ("[W]e have never held that foster parents have a property interest in the foster care benefits paid on behalf of the children under their care."). Van Dyke also cites to portions of Illinois Foster Parent Law, 20 Il. Comp. Stat. 520/1–15 (2014) and the 14-day notice requirement of the Illinois Foster Parent Law Implementation Plan. It remains unclear if Van Dyke cites these authorities for the proposition that they establish a constitutionally-protected property interest or to establish the contours of the process due her. They do not support the former. "Process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). "Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.*

Van Dyke identifies no legal authority establishing "an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 (1982). Van Dyke cannot maintain a procedural due process claim without such a constitutionally-protected interest. Count I is dismissed with prejudice.

### C.     Van Dyke's Claim for First Amendment Retaliation Survives

Lastly, Count III of the Third Amended Complaint alleges Defendants retaliated against Van Dyke for exercise of her First Amendment rights. "In order to establish a First Amendment

retaliation claim, a plaintiff must show that her speech was constitutionally protected under the circumstances, and that the defendants retaliated against her because of that speech." *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999). To survive a motion to dismiss, Van Dyke must allege that "(1) [s]he engaged in activity protected by the First Amendment; (2) [s]he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Only Barnes moves to dismiss Count III.[4]

First, the Court must address a threshold legal matter. To support dismissal, Barnes relies on cases applying the "public concern" test for analysis of First Amendment retaliation claims made by public employees. Van Dyke, however, is not a public employee. Barnes cites one case in which the "public concern" test was extended to a private citizen. *See Landstrom v. Ill. Dep't of Children & Family Serv.*, 699 F. Supp. 1270, 1278 (N.D. Ill. 1988), *aff'd,* 892 F.2d 670 (7th Cir. 1990).[5] But subsequent to *Landstrom*, the Seventh Circuit abrogated its own precedent that applied the "public concern" test to non-public employees, holding that a prisoner's speech can be protected under the First Amendment even where it does not involve a matter of public concern. *See generally Bridges*, 557 F.3d 541 (abrogating *Brookins v. Kolb*, 990 F.2d 308 (7th Cir. 1993)). As another district court in the Northern District aptly recognized, fundamental inconsistency between *Landstrom* and *Bridges* leaves district courts in a position of having to choose "which holding is likely to prevail." *See Nolan v. Vill. of Dolton*, No. 10 CV 7357, 2011 WL 1548343, at *3 (N.D. Ill. Apr. 21, 2011).

---

[4]    While Johnson and Fultz move generally to dismiss Van Dyke's Third Amended Complaint, they offer no specific arguments addressing First Amendment retaliation.

[5]    The Seventh Circuit affirmed the district court's analysis without comment on the application of the "public concern" test. *See Landstrom*, 892 F.2d at 678–79.

In particular, *Nolan* recognized that the Seventh Circuit, though not overruling *Landstrom* in *Bridges*, nevertheless relied on a Third Circuit holding directly contrary to *Landstrom*'s application of the "public concern" test to a private citizen's First Amendment retaliation claim. Specifically, the Seventh Circuit noted that "outside the employment context the First Amendment forbids retaliation for speech *even about private matters.*" *Bridges*, 557 F.3d at 551 (quoting *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 284 (3d Cir. 2004)). Consequently, "the logic of *Bridges* is simply inconsistent with *Landstrom*, if *Landstrom* means that only speech touching on a matter of public concern is protected." *Nolan*, 2011 WL 1548343, at *2.[6]

The Seventh Circuit has since expanded *Bridges* and held that, even in the case of a prisoner asserting First Amendment retaliation claims as an *employee* of the prison, the "public concern" limitation does not apply. *See Watkins v. Kasper*, 599 F.3d 791, 795 (7th Cir. 2010). In doing so, the Seventh Circuit "completely jettison[ed] the public concern test from our prisoner free speech jurisprudence, even in the case of speech by a prisoner-employee." *Id.* The logic underlying *Watkins* also jars against *Landstrom*. In *Watkins*, the Seventh Circuit grounded application of the "public concern" test in the unique relationship between the government and its public servants:

> In the public employment cases, the Supreme Court has drawn a fine line between the speaker's role as a citizen and as a public employee. A citizen who wants the benefits of a government job may be expected to accept certain restrictions on speech made as a public employee, restrictions that the public employer would have no authority to impose but for the employment relationship. As the Court has emphasized, giving public employers this discretion to limit their employees' internal workplace complaints is essential for efficient government operations. Outside of the public employee's job, however, these operational concerns fade, and the employee may go back to living and speaking as an ordinary citizen. In

---

[6] *Nolan* further found persuasive that many circuits have explicitly held the "public concern" test does not apply to First Amendment retaliation claims outside the public employee context. *See* 2011 WL 1548343, at *3 (citing cases from the First, Second, Sixth, Ninth, and Tenth Circuits).

essence, the public employee's relationship with the government employer, and the corresponding restraint on the employee's speech, is limited to the job itself.

*Id.* at 795–96 (citations omitted).

The Court believes that *Nolan* provides a persuasive roadmap for tackling the inconsistency between *Landstrom* and *Bridges*. Van Dyke spoke neither as public employee nor prisoner nor even prison employee. She spoke as a private citizen. Under *Bridges* and *Watkins*, the "public concern" test does not apply to Van Dyke's First Amendment retaliation claim. Even *Landstrom* itself recognized that the "public concern" test "could prove too much if translated with full vigor to a nonemployee citizen's statement upon a matter of personal interest . . . . No public official should be permitted to muzzle a private individual with impunity on matters purely personal to that individual either." *Landstrom*, 699 F. Supp. at 1279. Consequently, "[f]ollowing the Seventh Circuit's logic, [Van Dyke's] claim should not be subject to the public concern test, given that [Van Dyke] spoke to Defendant[s] as a private citizen and there is no government employer whose interests demand consideration." *See Wysocki v. Crump*, 838 F. Supp. 2d 763, 770 (C.D. Ill. 2011).

Thus, Barnes' "public concern" arguments are inapplicable here to establish whether Van Dyke engaged in protected speech.[7] On this point, Van Dyke correctly argues that "[t]here is considerable authority . . . that the filing of *any* lawsuit is protected by the First Amendment as a form of petitioning government for the redress of grievances." *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009). In *Dobbey*, the Seventh Circuit recognized that the scope of petitioning the government for redress in this context was unsettled. *Id.* But contrasting the Seventh Circuit's precedent to that of the Tenth Circuit, Judge Posner opined that between the

---

[7]     Even if the "public concern" test controlled here, Van Dyke's private motives would not make her petitioning a court for redress a solely private matter. "[A] plaintiff's speech could be characterized as a matter of public concern even if the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light." *Marshall v. Porter Cnty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994).

broad standard that "a private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress," see *Van Deelen v. Johnson,* 497 F.3d 1151, 1156 (10th Cir. 2007) (emphasis in original), and the narrower standard that "a private office dispute cannot be constitutionalized merely by filing a legal action," see *Altman v. Hurst,* 734 F.2d 1240, 1244 n.10 (7th Cir. 1984) (per curiam), there is "a lot to argue over." *Dobbey*, 574 F.3d at 447.

Van Dyke alleges that Defendants engaged in a pattern of retaliation against her for reporting suspected abuse of K.C. to LSSI personnel, the DCFS hotline, other DCFS personnel, and the police. *See* 3d Am. Compl. ¶ 41. Van Dyke reported the abuse "to obtain redress, and to speak to a counselor of her choice to help K.C. following his report of inappropriate sexual touching by his father, and to access the courts to obtain redress for herself and K.C." *Id.* Van Dyke therefore pleads that she engaged in private speech to obtain redress and counseling for herself and K.C. Van Dyke further claims retaliation took two forms. First, Defendants "abducted K.C. from her home forcibly and under false pretenses," and second, Defendants "steadily diminish[ed] the amount of time she is allowed to visit with K.C. and stopp[ed] her from speaking on the phone with K.C. at all." *See* 3d Am. Compl. ¶ 43.

Based upon such allegations, Van Dyke states a claim for First Amendment retaliation. She alleges she engaged in protected activity: reporting suspected abuse and petitioning a court to intervene. *See also id.* ¶ 17. She alleges that she is "extremely fearful" of further reporting her suspicions of abuse out of a concern about possible future retaliation. *See id.* ¶ 23. She also alleges that it was because of this protected activity that Defendants initially retaliated. *See id.* ¶ 18. Therefore, Van Dyke has alleged the necessary elements. *See Bridges*, 557 F.3d at 546.

Lastly, Barnes argues that Van Dyke cannot prevail because "a plaintiff may only bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation," see *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002), and Van Dyke has not personally alleged Barnes' involvement in the retaliation.[8]  Not so.  The second of the alleged retaliatory actions, deprivation of phone privileges with K.C. and steadily decreasing visits without court order, may have been the sole responsibility of Johnson.  *See* 3d Am. Compl. ¶ 23 ("As a result of her ongoing and most recent reports, Defendants Johnson has without any court order, eliminated phone communication and has severely limited contact between Plaintiff and K.C.").  But the first retaliatory action — the removal of K.C. from Van Dyke's home forcibly and under false pretenses — involves *all* the remaining Defendants, including Barnes. *See id.* ¶ 18 ("Fultz did this on February 26, 2013, accompanied by police and Barnes[.]").

And while the Court has held that the removal of K.C. cannot form the basis of any substantive or procedural due process claim, the removal remains a harm that would qualify as retaliation under a First Amendment claim.  *See Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 534 (7th Cir. 2006) (noting that the level of harm "need not be great" and even "minor harassment" could suffice); *see also Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.").  Van Dyke adequately pleads a claim for First Amendment retaliation.

---

[8]     Barnes argues that there is no vicarious liability under 42 U.S.C. § 1983, citing *O'Shell v. Cline*, 571 F. App'x 487, 491 (7th Cir. 2014).  While correct, this does not insulate Barnes from liability where she is alleged to have been personally involved in the retaliatory action.  *See* 3d Am. Compl. ¶ 18.

## IV. Conclusions

For the reasons provided herein, the Court grants in part and denies in part Defendants' motions to dismiss [90], [92].  The Court grants Defendants' motions insofar as they seek dismissal of Count I for a procedural due process violation.  The Court denies Defendants Johnson and Fultz's motion insofar as it seeks dismissal for failure of proper service.  The Court denies Defendant Barnes' motion insofar as it seeks dismissal of Count III for First Amendment retaliation.

**SO ORDERED**                                    **ENTER:  1/12/15**

**JOHN Z. LEE**
**United States District Judge**