IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTEL VAN DYKE, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 5971 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| DAWN BARNES; and LINDA FULTZ | ) | |
| and MELISSA JOHNSON, individually | ) | |
| and officially as employees of | ) | |
| Lutheran Social Services of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christel Van Dyke is the maternal grandmother and former foster parent of K.C. In 2013, when K.C. was three years old, employees from Lutheran Social Services of Illinois (LSSI) and the Illinois Department of Children and Family Services (DCFS) came to Plaintiff's home, and K.C. was removed. Plaintiff alleges that, after K.C.'s removal, LSSI employees decreased the amount of time that Plaintiff was allowed to visit and speak with K.C.

Based upon these events, Plaintiff has sued Defendants Linda Fultz and Melissa Johnson, two LSSI employees, and Defendant Dawn Barnes, a DCFS employee. Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth and First Amendments, alleging that Defendants unreasonably searched her house upon K.C.'s removal and retaliated against her for exercising her right to free speech. Defendants have moved for summary judgment. For the reasons

stated herein, Defendant Fultz and Johnson's motion for summary judgment [145] is denied. Defendant Barnes's motion for summary judgment [146] is granted.

## **Local Rule 56.1**

Motions for summary judgment in the Northern District of Illinois are governed by Local Rule 56.1. "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011) (quoting *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010)).

Local Rule 56.1(a)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LR 56.1(a)(3). Local Rule 56.1(a) further specifies that this statement of facts "shall consist of short numbered paragraphs, including within each paragraph specific references to affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a). In addition, Local Rule 56.1(a) explicitly warns that "[f]ailure to submit such a statement constitutes grounds for denial of the motion." *Id.*

In turn, Local Rule 56.1(b)(3)(B) requires the nonmovant to file "a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Local Rule 56.1(b)(3)(C) further requires the nonmovant to file a response that contains a separate "statement . . . of any additional facts that require the denial of summary judgment." LR 56.1(b)(3)(C). The nonmovant's failure to comply with these requirements carries significant consequences. In particular, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

In moving for summary judgment, Fultz and Johnson have failed to file a statement of material facts as required by Local Rule 56.1(a)(3). Although they acknowledge that they have not complied with Local Rule 56.1(a)(3), they argue that their noncompliance is not fatal to their motion, on the ground that their supporting brief includes a "Facts section . . . supported by the record and attached exhibits." Fultz & Johnson's Reply at 1, ECF No. 164.

The Court is unpersuaded that Fultz and Johnson's inclusion of a "Facts section" in their brief warrants lenient enforcement of Local Rule 56.1(a). First, not

3

all of the factual statements in Fultz and Johnson's brief are supported with citations to the record. *See* Fultz & Johnson's Mot. Summ. J. at 2–7, ECF No. 145. "Factual allegations not properly supported by citation to the record are nullities." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). Moreover, by failing to file a statement of facts, Fultz and Johnson have precluded Plaintiff from filing a response as required by Local Rule 56.1(b)(3)(B). The Court therefore cannot determine, based on the record before it, which material facts are disputed between the parties. For these reasons, strict enforcement of Local Rule 56.1(a) is appropriate in the present case. Fultz and Johnson's motion for summary judgment is accordingly denied for failure to file a statement of facts under Local Rule 56.1(a).[1]

The filings relating to Barnes's motion for summary judgment also involve a Local Rule 56.1 violation, although of a different nature than Fultz and Johnson's. In support of her motion, Barnes filed a statement of facts as required by Local Rule 56.1(a)(3). Plaintiff, however, failed to file a response to Barnes's statement of facts as required by Local Rule 56.1(b)(3).[2] Because Plaintiff has failed to comply with Local Rule 56.1(b)(3), all facts in Barnes's Local Rule 56.1(a)(3) statement are

---

[1]  In the event Defendants Fultz and Johnson wish to seek leave to file another motion for summary judgment, they should file a motion requesting leave to do so within 14 days of the issuance of this Order.

[2]  Plaintiff also failed to file a response brief in opposition to Barnes's motion for summary judgment. After granting two motions for extension of time to file her response, the Court gave Plaintiff a final extension to respond by June 28, 2016. ECF No. 158. On that date, rather than filing a response, Plaintiff filed a third motion for extension of time. ECF No. 160. The Court held a hearing on July 6, 2016, to rule on Plaintiff's motion. Plaintiff did not appear for the hearing, and the motion was accordingly denied. ECF No. 163.

4

deemed admitted for purposes of Barnes's motion for summary judgment. *See* LR 56.1(b)(3); *Smith*, 321 F.3d at 683.

## Factual Background

Plaintiff is the former foster mother and maternal grandmother of a minor named K.C. Barnes's LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 148. At the time of the events in question, Defendant Barnes worked as a child protection investigator for DCFS. *Id.* ¶ 2. Defendant Fultz worked as a case worker for LSSI. *Id.* ¶ 3.

DCFS took protective custody of K.C. in November 2011, after K.C. became the subject of juvenile court proceedings in the Circuit Court of Winnebago County, Illinois. *Id.* ¶ 7. K.C. was two years old at the time. *Id.* DCFS contracted with LSSI to provide child welfare services to K.C. *Id.* ¶ 8. Accordingly, LSSI placed K.C. in foster care with Plaintiff in December 2011. *Id.* ¶ 9.

In June 2012, while K.C. was still under Plaintiff's care, the Circuit Court of Winnebago County adjudicated K.C. a neglected minor. *Id.* ¶ 11. The DCFS Guardianship Administrator was thus appointed as K.C.'s legal guardian and custodian. *Id.* In addition, the DCFS Guardianship Administrator was given the discretion to place K.C. in the care of his mother, a responsible relative, or a foster parent. *Id.*

Plaintiff alleges that, during the time K.C. was under her foster care, he reported to her that his biological father, R.C., was sexually abusing him during his visitation hours. 4th Am. Compl. ¶ 13, ECF No. 115. Plaintiff further alleges that she reported this sexual abuse to Defendants, the DCFS child abuse hotline, and

5

the police, and that she also petitioned the juvenile court to suspend R.C.'s visitation rights in light of the sexual abuse. *Id.* ¶¶ 16–17.

On February 1, 2013, the DCFS child abuse hotline received a report that K.C. was being abused and neglected by Plaintiff herself. Barnes's LR 56.1(a)(3) Stmt. ¶ 12. Specifically, it was reported that Plaintiff had pinched K.C., causing him to have a "scratch/cut." *Id.* It was further reported that K.C. had witnessed "numerous altercations, possibly physical," between Plaintiff and K.C.'s biological mother, who was not authorized to live in Plaintiff's home. *Id.*[3]

When the DCFS child abuse hotline receives a report, the report is transmitted to a local DCFS field office. *Id.* ¶ 13. A supervisor in the local field office then assigns the report to a child protection investigator. *Id.* Child protection investigators do not choose the reports they investigate. *Id.* Barnes was the child protection investigator who was assigned to investigate the hotline report about K.C. made on February 1, 2013. *Id.* ¶ 14. This assignment was Barnes's first involvement with K.C.; she had not participated in K.C.'s juvenile court proceedings, and she had no knowledge, control, or input regarding any social services provided for K.C. *Id.* ¶¶ 15–16.

On February 26, 2013, Barnes went to Plaintiff's residence to carry out her investigation of the hotline report. *Id.* ¶ 17. That same day, Fultz went to Plaintiff's residence to remove K.C. from Plaintiff's care. *Id.* ¶ 18. Barnes and

---

[3] Attached to Barnes's Local Rule 56.1(a) statement of facts is a copy of the intake form documenting this DCFS hotline report. *See* Barnes LR 56.1(a)(3) Stmt., Ex. E, at 1–3 (filed under seal). The name of the person who called the hotline to make the report is redacted from the intake form and therefore remains unknown to the Court.

6

Fultz drove separate cars to Plaintiff's apartment, met outside the apartment once they arrived, and then rang Plaintiff's doorbell together. *Id.* ¶¶ 19, 21. According to Barnes, Fultz's removal of K.C. was unrelated to Barnes's child abuse investigation. *Id.* ¶ 31.[4]

When Plaintiff answered the door, she did not greet Barnes and Fultz in a welcoming manner, and whether Plaintiff gave Barnes and Fultz permission to enter her residence remains unclear. *See id.* ¶ 22. Barnes suggests that she may have had permission to enter the front portion of Plaintiff's apartment, *id.* ¶ 24, but she also acknowledges Plaintiff's deposition testimony that Fultz "pushed" the door open to gain entry, *id.* ¶ 22.

Once inside the apartment, Barnes proceeded to carry out her investigation. She observed K.C. and took notes on her observations. *See id.* ¶ 28. She also interviewed K.C.'s biological mother, who had been present at Plaintiff's residence when Barnes and Fultz arrived. *Id.* ¶¶ 23, 29.

Plaintiff was not cooperative with Barnes and Fultz, and at some point both Plaintiff and Barnes called the Tinley Park Police Department. *Id.* ¶ 32. Two officers came to Plaintiff's residence. *Id.* ¶ 33. In their depositions, the officers stated that, upon their arrival, Plaintiff did not complain of any unprofessional conduct on Barnes's or Fultz's part, and the officers did not see any signs of a forced entry into Plaintiff's apartment. *Id.* ¶¶ 35–36.

---

[4] The record is devoid of any facts regarding the circumstances that brought Fultz to Plaintiff's home on that day.

7

The officers remained at Plaintiff's apartment until Fultz left with K.C. *Id.* ¶ 39. Barnes left alone in her own vehicle. *Id.* At the conclusion of her investigation, Barnes recommended that the hotline report of child abuse be classified as unfounded. *Id.* ¶ 42. On April 2, 2013, Barnes's supervisor reviewed and adopted Barnes's recommendation. *Id.* ¶ 43.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmovant "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

## Analysis

In her Fourth Amended Complaint, Plaintiff alleges that Barnes conducted a warrantless search in violation of the Fourth Amendment by entering Plaintiff's apartment to conduct the child abuse investigation on February 26, 2013. Plaintiff also alleges that Barnes violated her First Amendment rights by conducting the

8

investigation as a form of retaliation against Barnes's protected First Amendment activity. Barnes has moved for summary judgment with respect to these claims. For the reasons explained below, Barnes's motion for summary judgment is granted.

**I.      Fourth Amendment Unreasonable Search Claim**

In seeking summary judgment as to Plaintiff's Fourth Amendment claim, Barnes invokes the doctrine of qualified immunity. "[Q]ualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A defendant is not entitled to qualified immunity where (1) the defendant violated the plaintiff's statutory or constitutional rights and (2) the statutory or constitutional right at issue was "clearly established" at the time of the defendant's conduct. *Id.* at 925–26 (citing *Pearson*, 555 U.S. at 230). "Courts are free 'to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* at 926 (quoting *Pearson*, 555 U.S. at 236).

When a defendant claims qualified immunity, the plaintiff bears the burden of proving that her allegedly violated constitutional right was "clearly established" in a "particularized sense." *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). To meet this burden, the plaintiff must show that, "at the time of the challenged conduct, the contours of a right [were] sufficiently clear that every reasonable official would have

9

understood that what he [was] doing violates that right." *Hernandez*, 657 F.3d at 473–74 (internal quotation marks and alterations omitted). The plaintiff need not present "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, Barnes contends that there exists no Fourth Amendment right to be free from a warrantless search of a foster home conducted by a state employee investigating reported abuse of a foster child who is under the state's legal custody. In reviewing the case law to determine whether such a right was clearly established at the time of the events in question, the Court has found few decisions involving the Fourth Amendment's application to searches of foster homes or searches in the context of child abuse investigations. Among the few cases bearing on these topics (or, at least, on the latter topic) is *Darryl H. v. Coler*, 801 F.2d 893 (7th Cir. 1986).

In *Darryl H.*, the Seventh Circuit considered whether a DCFS policy permitting caseworkers to search children's bodies for evidence of abuse violated the Fourth Amendment's prohibition on unreasonable searches. *Id.* at 894. The court emphasized that "whether a search is 'reasonable,' in the constitutional sense, will vary according to the context of the search." *Id.* at 900. With regard to the searches at issue, the court held that neither a warrant nor probable cause was necessary to satisfy the Fourth Amendment's requirement of reasonableness. *Id.* at 901–02. In so holding, the court balanced the individual privacy interests at stake against the state's interest in conducting the searches. *Id.* The court explained that although

10

the searches were "a significant intrusion into the [children's] privacy," this privacy interest was outweighed by the state's "extraordinarily weighty" interest in investigating reports of child abuse. *Id.* at 901–02. The court then proceeded to hold that the searches at issue were reasonable for Fourth Amendment purposes as long as (1) they were "justified at [their] inception," and (2) the conduct relating to the searches was "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 903 (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)).[5]

The present case is arguably similar to *Darryl H.* Both cases, framed broadly, pose the question whether a warrantless search conducted in connection with a child abuse investigation is reasonable under the Fourth Amendment. But the extent of *Darryl H.*'s application is complicated by the Seventh Circuit's subsequent decision in *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003). In *Heck*, the court considered whether state employees who interviewed children at a private grade school to investigate child abuse had conducted an unreasonable search of the school's property in violation of the Fourth Amendment. *Id.* at 499. Although it involved a search in the context of a child abuse investigation, the *Heck* court did not use the analytical framework delineated in *Darryl H.* Instead, it relied upon the principle that, subject to exceptions for consent and exigent circumstances, "a

---

[5] The court in *Darryl H.* was reviewing a denial of a preliminary injunction enjoining DCFS from implementing the search policy in question. As such, the Seventh Circuit did not decide whether the searches at issue were reasonable under this two-part test. Rather, it decided only that the district court had not abused its discretion in determining that the plaintiffs had not demonstrated a likelihood of prevailing on the merits of their Fourth Amendment claim. *Id.* at 902–05.

search or seizure carried out on . . . [private] premises without a warrant is per se unreasonable," so long as the plaintiff has a reasonable expectation of privacy on the premises. *Id.* at 511, 513 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)); *see also Michael C. v. Gresbach*, 526 F.3d 1008, 1014 (7th Cir. 2008) (describing *Heck*). The court held that the searches in *Heck* violated the Fourth Amendment because the school and its administrators had a reasonable expectation of privacy in the school's premises. *Heck*, 327 F.3d at 511–13. The court distinguished *Darryl H.* on the ground that it involved searches not at a private school but at a public school, where students and parents have a diminished expectation of privacy. *Id.* at 513–14.

In the years since *Darryl H.* and *Heck*, the Seventh Circuit has acknowledged that, under these precedents, "the line implicating Fourth Amendment concerns is blurred when it applies to the government and child abuse investigations." *Michael C.*, 526 F.3d at 1010. Indeed, these precedents provide little firm guidance in this case. On the one hand, *Heck*'s reasoning that it is presumptively unreasonable to conduct a warrantless search of private property where the plaintiff has a reasonable expectation of privacy might apply, given that the search at issue is of Plaintiff's private residence. On the other hand, a foster parent such as Plaintiff may have a diminished expectation of privacy in her home when a child in the legal custody of the state also lives there.

In other contexts, the Seventh Circuit has held that whether a child is in the state's legal custody—rather than in the legal custody of a private citizen—may be

12

pivotal to an analysis of whether the state has violated constitutional rights. *See Camp v. Gregory*, 67 F.3d 1286, 1292 (7th Cir. 1995) (holding that whether a DCFS caseworker has violated a child's due process rights by placing him in an unsuitable foster home depends in part on whether the child is in the state's legal custody). Such considerations may also apply in the Fourth Amendment context. In accepting a ward of the state into his or her home, a foster parent arguably assents to some state intrusion onto his or her property for the purpose of investigating allegations of child abuse or neglect. If so, the state's compelling interest in investigating potential abuse of children in its care may outweigh the diminished privacy interests of the foster parent.

In ruling on Barnes's motion for summary judgment, however, the Court need not decide whether the analytical framework set forth in *Darryl H.*, rather than *Heck*, applies to the facts of this case. Given the paucity of case law bearing on the constitutional question at issue, it can hardly be said that existing precedent has placed the constitutional question "beyond debate." *Hernandez*, 657 F.3d at 473–74 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Court therefore concludes that existing precedent has not clearly established a foster parent's right to be free from a search of his or her home in connection with a child abuse investigation concerning a foster child in the state's legal custody. By declining to respond to Barnes's motion for summary judgment, Plaintiff has failed to meet her burden of persuading the Court otherwise. *See id.* at 473. For these reasons,

13

Barnes is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim.

## II. First Amendment Retaliation Claim

Plaintiff has also brought a First Amendment retaliation claim against Barnes. In support, Plaintiff alleges that Barnes invaded her home and removed K.C. in retaliation against Plaintiff for reporting R.C.'s suspected sexual abuse of K.C., speaking to a counselor about this sexual abuse, and petitioning the juvenile court for redress. 4th Am. Compl. ¶¶ 53–54.

To prevail on a First Amendment retaliation claim, a plaintiff must establish that (1) she "engaged in activity protected by the First Amendment"; (2) she "suffered a deprivation that would likely deter First Amendment activity"; and (3) her First Amendment activity was at least a "motivating factor" of the defendant's allegedly harmful conduct. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). If the plaintiff can prove that her First Amendment activity was a motivating factor of the defendant's conduct, then "the burden shifts to the defendant to show that the harm would have occurred anyway . . . and thus that the violation had not been a 'but for' cause of the harm." *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011).

As a threshold matter, it is unclear whether Barnes did, in fact, play a role in K.C.'s removal as Plaintiff alleges. On the one hand, Barnes asserts (and Plaintiff has admitted for the purpose of this motion) that Barnes's visit to Plaintiff's home was unrelated to Fultz's removal of K.C. Barnes's LR 56.1(a)(3) Stmt. ¶ 31. On the other hand, the record offers no explanation as to how or why Barnes and Fultz

14

happened to arrive at Plaintiff's residence on the same date and around the same time. Drawing inferences in Plaintiff's favor, a reasonable jury could perhaps decide that the timing of Barnes's and Fultz's arrivals was not merely coincidental and that, given Barnes's and Fultz's apparent coordination in visiting Plaintiff's apartment, Barnes must have played some role in Fultz's removal of K.C.

Even with the benefit of such an inference, however, Plaintiff cannot prevail on her First Amendment claim as a matter of law, because she has failed to establish a genuine dispute as to whether her First Amendment activities—that is, reporting R.C.'s sexual abuse, speaking to a counselor, and petitioning the juvenile court—were "motivating factors" in any of Barnes's conduct. *See Thayer*, 705 F.3d at 251. Until Barnes was assigned to investigate the hotline report on February 1, 2013, she had no knowledge, control, or input regarding any of the social services provided for K.C. Barnes's LR 56.1(a)(3) Stmt. ¶¶ 14, 16. She also did not participate in K.C.'s juvenile court proceedings. *Id.* ¶ 15. Because Barnes did not know the prior history of K.C.'s social services and court proceedings, no reasonable jury could find that Plaintiff's conduct in connection with those services and court proceedings motivated Barnes's decision to visit Plaintiff's home in the course of investigating the hotline report. *See Hernandez v. Dart*, 635 F. Supp. 2d 798, 807 (N.D. Ill. 2009) (dismissing First Amendment retaliation claim where plaintiff failed to allege that defendants had knowledge of his protected First Amendment activities).

Further, even if Plaintiff could show that her First Amendment activity was a motivating factor in Barnes's conduct, Barnes would still be entitled to summary judgment, because there is no genuine dispute that Barnes would have visited and entered Plaintiff's home regardless of Plaintiff's First Amendment activity. *See Greene*, 660 F.3d at 977. Barnes had no control over her supervisor's decision to assign the hotline report to Barnes for further investigation. Barnes's LR 56.1(a) Stmt. ¶¶ 13–14. As such, the supervisor's assignment of K.C.'s case to Barnes—not Plaintiff's First Amendment activity—was the "but for" cause of Barnes's visit. *See Greene*, 660 F.3d at 977–80. Plaintiff has failed to raise a genuine dispute as to this issue, and Barnes is therefore entitled to summary judgment as to Plaintiff's First Amendment claim.

## Conclusion

For the reasons stated herein, Fultz and Johnson's motion for summary judgment [145] is denied. Barnes's motion for summary judgment [146] is granted, and Barnes is terminated as a defendant in this case. A status hearing will be held at 9:00 a.m. on Tuesday, April 25, 2017, at which point the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**     ENTERED   3/24/17

*/s/ John Z. Lee*

_____

**John Z. Lee**
**United States District Judge**