# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTEL VAN DYKE, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 5971 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| LINDA FULTZ and | ) | |
| MELISSA JOHNSON, individually | ) | |
| and officially as employees of | ) | |
| Lutheran Social Services of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christel Van Dyke is the maternal grandmother and former foster parent of K.C., a minor. In 2013, employees from Lutheran Social Services of Illinois ("LSSI") and the Illinois Department of Children and Family Services ("DCFS") came to Plaintiff's home and removed K.C. from the home.

Based upon these events, Plaintiff, now proceeding *pro se*, has sued Defendants Linda Fultz and Melissa Johnson, two LSSI employees. Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth and First Amendments, alleging that Defendants unreasonably entered her home to remove K.C. and retaliated against her for exercising her right to free speech. Defendants have moved for summary judgment. For the reasons stated herein, Defendants' motion is granted.

## Factual Background[1]

Plaintiff is the former foster mother and maternal grandmother of a minor named K.C. Defs.' LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 180. At the time of the events in question, Defendant Fultz worked as a case worker for LSSI, *id.* ¶ 3, and Defendant Johnson worked as a manager for LSSI, *id.* ¶ 4.

DCFS took protective custody of K.C. in November 2011, after K.C. became the subject of juvenile court proceedings in the Circuit Court of Winnebago County, Illinois. *Id.* ¶ 7. DCFS contracted with LSSI to provide child welfare services to K.C. and his family. *Id.* ¶ 8. Accordingly, LSSI placed K.C. in foster care with Plaintiff in December 2011. *Id.* ¶ 9. At that time, Plaintiff signed a Relative Caregiver Placement Agreement, which forbade Plaintiff from, among other things, allowing K.C.'s birth parents to reside in Plaintiff's home without DCFS's knowledge and approval, or arranging medical treatment for K.C. without approval. *Id.* ¶ 11. In January 2012, Plaintiff also signed the Foster Parent Placement Agreement, which stated that LSSI reserved the right to remove K.C. from Plaintiff's home if it were deemed to be in the child's best interests. *Id.* ¶ 12.

Plaintiff alleges that, during the time K.C. was under her foster care, he reported to her that his biological father, R.C., was sexually abusing him during his

---

[1] The following facts are undisputed except where noted. Any properly supported facts that a party disputes without "providing specific references to the affidavits, parts of the record, and other supporting materials relied upon," *see* LR 56.1(b)(3)(B), is deemed admitted. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015).

2

court-ordered visitation hours. *Id.* ¶¶ 14–15; 4th Am. Compl. ¶ 13, ECF No. 115. Plaintiff reported this alleged sexual abuse to Defendants, the DCFS child abuse hotline, and the police. Defs.' LR 56.1(a)(3) Stmt. ¶ 15. Plaintiff refused to permit further required visits between K.C. and his father,[2] but the juvenile court ordered her to allow the visits to continue. *Id.* ¶ 16. Plaintiff then petitioned the juvenile court to suspend R.C.'s visitation rights. *Id.* ¶ 17. Plaintiff failed to appear with K.C. at the February 2013 hearing to address Plaintiff's compliance with R.C.'s visitation rights.[3] *Id.* ¶ 18. Soon thereafter, Defendant Johnson determined to remove K.C. from Plaintiff's foster care. *Id.* ¶ 20.

Accordingly, on February 26, 2013, Fultz went to Plaintiff's residence to remove K.C. from Plaintiff's care, and Plaintiff answered the door.[4] *Id.* ¶¶ 26–27. Whether Plaintiff then gave Fultz permission to enter her residence remains unclear. Plaintiff suggests that she cracked the door open slightly and that Fultz then pushed the door and entered without consent. Pl.'s Resp. Defs.' LR 56.1(a)(3)

---

[2]     Plaintiff denies Defendants' phrasing that she "refused to cooperate" with R.C.'s visits, on the basis that she was "act[ing] to protect the child from harm." Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 16, ECF No. 198. Regardless of Plaintiff's justification, she does not deny that she denied R.C.'s visitation rights. *See id.*

[3]     An administrative law judge later reviewed Plaintiff's allegations regarding K.C.'s father and found them to be without merit and "misguided, vitriolic attempts to impede [R.C.'s] service plan and the Juvenile Court's reunification goal." Defs.' LR 56.1(a)(3) Stmt. ¶¶ 19, 38.

[4]     Fultz was also accompanied by Dawn Barnes, who worked as a child protection investigator for DCFS. Defs.' LR 56.1(a)(3) Stmt. ¶ 2. The Court previously granted summary judgment to Defendant Barnes on all claims. *See generally Van Dyke v. Barnes*, No. 13 C 5971, 2017 WL 1105390 (N.D. Ill. Mar. 24, 2017). Because Defendants' statements of fact with regard to Barnes are not relevant to Plaintiff's claims against Defendants Johnson and Fultz, the Court has not included them in this factual summary.

3

Stmt. ¶ 27. Defendants deny that Fultz entered without consent. Defs.' Resp. Pls.' Stmt. ¶ 26, ECF No. 211.

At some point, two Tinley Park Police Department officers were called to the scene. Defs.' LR 56.1(a)(3) Stmt. ¶ 28. In their depositions, the officers stated that, upon their arrival, Plaintiff did not complain of any unprofessional conduct on Fultz's part and that the officers did not see any signs of a forced entry into Plaintiff's apartment. *Id.* ¶¶ 30–32.

At some during Fultz's visit to Plaintiff's home, Fultz provided Plaintiff with a notice of Change of Placement of K.C., *id.* ¶ 33, and Fultz eventually left Plaintiff's residence with K.C., *id.* ¶ 35.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552,

4

554–55 (7th Cir. 2014). In reviewing a motion for summary judgment, the Court gives the nonmovant "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

Moreover, Rule 56 "requires the district court to grant a motion for summary judgment after discovery 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 743 (7th Cir. 2011) (quoting Celotex *Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *See Celotex,* 477 U.S. at 322. Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *See id.* at 321–22.

## Analysis

In her Fourth Amended Complaint, Plaintiff alleges that Fultz, under the direction of Johnson, conducted an unreasonable search in violation of the Fourth Amendment when she entered Plaintiff's apartment to remove K.C. on February 26, 2013. Plaintiff also alleges that Defendants violated her First Amendment rights by removing K.C. as a form of retaliation for Plaintiff making reports of sexual abuse of K.C. by R.C. Defendants have moved for summary judgment with respect to

these claims. For the reasons explained below, Defendants' motion for summary judgment is granted.

## I. Fourth Amendment Unreasonable Search Claim

In seeking summary judgment as to Plaintiff's Fourth Amendment claim, Defendants invoke the doctrine of qualified immunity. "[Q]ualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A defendant is not entitled to qualified immunity where (1) the defendant violated the plaintiff's statutory or constitutional rights and (2) the statutory or constitutional right at issue was "clearly established" at the time of the defendant's conduct. *Id.* at 925–26 (citing *Pearson*, 555 U.S. at 230). "Courts are free 'to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* at 926 (quoting *Pearson*, 555 U.S. at 236).

When a defendant claims qualified immunity, the plaintiff bears the burden of proving that her allegedly violated constitutional right was "clearly established" in a "particularized sense." *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). To meet this burden, the plaintiff must show that, "at the time of the challenged conduct, the contours of a right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right." *Hernandez*, 657 F.3d at

6

473–74 (internal quotation marks and alterations omitted). The plaintiff need not present "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

In determining whether a right is clearly established, courts "look first to controlling precedent on the issue from the Supreme Court and from this circuit." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012) (citing *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010)). "If such precedent is lacking, [courts] look to all relevant case law to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (internal quotation marks omitted); *see also, e.g., Hernandez v. Cook Cty. Sheriff's Office*, No. 07 C 855, 2017 WL 4535982, at *7 (N.D. Ill. Sept. 25, 2017) (surveying other federal circuit courts for authority where neither the Supreme Court nor the Seventh Circuit had addressed the issue).

To determine whether a defendant acting without a warrant or probable cause as to a crime has violated the Fourth Amendment's unreasonable search requirement, a court must determine that: (1) there was a "search" within the meaning of the Fourth Amendment; (2) if so, the plaintiff had a reasonable expectation of privacy, requiring the plaintiff to manifest a subjective expectation of privacy that society is prepared to recognize as objectively reasonable; and (3) the search was not subject to one of few, carefully delineated exceptions, including, for

example, consent and exigency. *See Doe v. Heck*, 327 F.3d 492, 509–11 (7th Cir. 2003).

Here, Defendants contend that the contours of the Fourth Amendment were not sufficiently clear such that a reasonable social worker would have recognized that he or she was engaging in an unreasonable search by entering, without a warrant, a foster home to remove a child in the legal custody of the state. *See* Defs.' Mem. Supp. at 8–10. Having reviewed the case law to determine whether the contours of the right were clearly established at the time of the events in question, it appears that the Fourth Circuit is the only federal court of appeals to have considered the issue.

In *Wildauer v. Frederick Cty.*, the Fourth Circuit held that the defendant sheriffs who entered a foster home without a warrant to remove a foster child were entitled to qualified immunity based on a lack of clearly established law to the contrary, emphasizing that defendants' visit was of a "non-criminal nature" and stating that "defendants correctly understood that the [foster childrens' biological] parents had a right to retrieve their children." 993 F.2d 369, 372–73 (4th Cir. 1993).

By contrast, the most pertinent cases in the Seventh Circuit are notably distinguishable because they address unreasonable seizure claims in the context of social workers removing children in their own parents' legal custody, from their own parents' homes. In *Brokaw v. Mercer County*, for example, the court held that it was clearly established that the government could not "use the government's power

8

to cause . . . the unjustified removal of a six-year-old child from his parents in order to destroy the family, based simply on the family's religious beliefs." 235 F.3d 1000, 1022 (7th Cir. 2000). The court stated that, "[i]n the context of removing a child from his home and family, a seizure is reasonable [only] if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that the state officers have reason to believe that life or limb is in immediate jeopardy." *Id.* at 1011.

Similarly, in *Siliven v. Indiana Department of Child Services*, the court held that the probable-cause inquiry "focus[es] . . . on the facts and circumstances known to defendants at the time they decided to remove [the child from his own parents], and whether a prudent caseworker (meaning one of reasonable caution) could have believed that [the child] faced an immediate threat of abuse based on those facts." 635 F.3d 921, 927 (7th Cir. 2011). And, somewhat further afield, in *Doe v. Heck*, the Seventh Circuit considered whether it was a search or seizure (and, if so, whether it was unreasonable) for social workers and police officers to interview a child—who was in the legal custody of his own parents—at a private grade school, for the purpose of investigating child abuse. 327 F.3d at 509–17. The court found that the child's parents exhibited a subjective, objectively reasonable expectation of privacy in placing their child in a private school and that the defendants had indeed conducted a search and seizure. *Id.* at 510. Given the reasonable expectation of privacy, the search conducted without a warrant (or pursuant to a carefully delineated exception) was held unreasonable. *Id.* at 510–14.

By contrast to the cases addressing the removal of a child in his parents' custody from his parents' own home or the search and seizure of a child at a private school where his parents had placed him, K.C. was in the state's legal custody, Plaintiff was acting as K.C.'s foster parent, and she had signed an agreement acknowledging that Defendants had the right to remove K.C. from Plaintiff's home, Defs.' LR 56.1(a)(3) Stmt. ¶ 12. Absent clearly established law to the contrary, a LSSI social worker could reasonably have believed that Plaintiff had provided consent for a social worker to enter the home to retrieve K.C, in exchange for Plaintiff being permitted to keep her grandchild K.C. in her home. *See Medlock v. Trustees of Ind. Univ.*, 738 F.3d 867, 872 (7th Cir. 2013) (holding that parties may, by contract, consent in advance to warrantless searches); *United States v. Schleining*, 181 F. Supp. 3d 531, 538 (N.D. Ill. 2015) (stating that plaintiff's contract "voluntarily relinquished Fourth Amendment rights in exchange for a valuable . . . opportunity") (citing *Medlock*, 738 F.3d at 872). Alternatively, a reasonable social worker may have believed that these facts indicated that Plaintiff did not possess a reasonable expectation of privacy in her home that would preclude social workers from entering the home to remove K.C., as they were authorized to do.

Accordingly, Defendants are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim.

## II. First Amendment Retaliation Claim

Plaintiff has also brought a First Amendment retaliation claim against Defendants. To prevail on this claim, a plaintiff must establish that (1) she "engaged in activity protected by the First Amendment"; (2) she "suffered a

deprivation that would likely deter First Amendment activity"; and (3) her First Amendment activity was at least a "motivating factor" of the defendant's allegedly harmful conduct. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). If a plaintiff can make a showing that her First Amendment activity was a motivating factor of the defendant's conduct, then "the burden shifts to the defendant to show that the harm would have occurred anyway . . . and thus that the violation had not been a 'but for' cause of the harm." *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011).

Plaintiff alleges that Defendants invaded her home and removed K.C. in retaliation against Plaintiff for reporting R.C.'s suspected sexual abuse of K.C., speaking to a counselor about this sexual abuse, and petitioning the juvenile court for redress. 4th Am. Compl. ¶¶ 40–51.

In their motion for summary judgment, Defendants do not dispute that Plaintiff engaged in protected speech or that she suffered a deprivation likely to deter protected speech. Defs.' Mem. Supp. at 13–14. Accordingly, Defendants have waived these arguments. *See Young v. C.H. Robinson Worldwide, Inc.*, No. 06 C 1081, 2007 WL 4365334, at *5 (N.D. Ill. Dec. 11, 2007) (finding defendant waived summary-judgment argument by failing to include it in opening brief).

Instead, Defendants' sole argument is that they had independent grounds to remove K.C. and, therefore, Plaintiff's speech was not a motivating factor in their actions. Defs.' Mem. Supp. at 13; *see Greene*, 660 F.3d at 977. In support, Defendants contend that Plaintiff violated the Foster Parent Placement and

11

Relative Caregiver Placement agreements in multiple ways. *Id.* These violations included allowing K.C.'s mother, B.V.D., to reside in the foster home with K.C., refusing to allow K.C.'s father to visit K.C., taking K.C. to doctors without notice to DCFS, and not bringing K.C. to required court hearings. *Id.*

For her part, Plaintiff does not dispute her failure to bring K.C. to some hearings. Pl.'s Stmt. ¶ 7, ECF No. 198. Additionally, she does not dispute that she refused to allow K.C.'s father to visit him, although she argues that this was justified. *See id.* ¶¶ 5, 6, 8, 10; Defs.' LR 56.1(a)(3) Stmt. ¶ 16, Pl.'s Resp. Defs.' Stmt. ¶ 16. Moreover, Plaintiff does not deny that the decision to change K.C.'s placement was based, at least in part, on Plaintiff's refusal to make K.C. available for parental visitations as required under the agreements. Defs.' LR 56.1(a)(3) Stmt. ¶ 20, Pl.'s Resp. Defs.' Stmt. ¶ 20. And, while Plaintiff disputes Defendants' assertion that she allowed K.C.'s mother to live with them, Plaintiff does not dispute the fact that DCFS received a hotline call reporting that K.C.'s mother was residing with them. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 21-22, Pl.'s Resp. Defs.' Stmt. ¶¶ 21-22.

On the other hand, Plaintiff simply relies on the fact that her phone calls and court petitions took place prior to K.C.'s removal and asks the Court to speculate that Defendants' actions were motivated, in whole or in part, by them. But mere timing is not enough. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) ("[T]emporal proximity alone is rarely sufficient to establish causation.") (internal quotations omitted). And other than this, Plaintiff offers no facts from

which a reasonable jury could conclude that her protected activity is what caused Defendants to act as they did. *See, e.g., Schroeder v. Drankiewicz*, 519 Fed. App'x 947, 950–51 (7th Cir. 2013) (upholding summary judgment as to retaliation claim because plaintiff's causation theory was based on "inferences resting on conjecture"); *Chi. United Indus., Ltd. v. City of Chi.*, 685 F. Supp. 2d 791, 818 (N.D. Ill. 2010) (finding plaintiff failed to defeat summary judgment where motivating-factor argument was "mere speculation or conjecture") (quoting *Rockwell v. Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 544 F.3d 752, 757 (7th Cir. 2008)). Accordingly, Defendants' motion for summary judgment as to Plaintiff's First Amendment claim is granted.

## Conclusion

For the reasons stated herein, Defendants' motion for summary judgment [178] is granted. Because no claims and no defendants remain, final judgment will be entered for Defendants. This case is terminated.

**IT IS SO ORDERED.**     ENTERED 3/29/18

_____
**John Z. Lee**
**United States District Judge**